UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

[**NOT FOR PUBLICATION]**

-----------------------------------------------------x
In re:

Jon Steven Hill, Jr.

Debtor.
-----------------------------------------------------x

Chapter 7

Case No. 8-19-77906-spg

**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART TRUSTEE'S MOTION TO COMPEL PAYMENT BY LIRR**

**Facts and Procedural History**

On November 19, 2019 (the "Petition Date"), Jon Steven Hill, Jr. (the "Debtor"), proceeding *pro se*, filed a voluntary petition for relief [ECF No. 1] under chapter 11 of title 11, United States Code (the "Bankruptcy Code").

On December 20, 2019, the chapter 7 trustee, Kenneth Kirschenbaum, Esq. (the "Trustee"), filed a Report of No Distribution.

On February 20, 2020, the Court entered an Order Discharging Debtor and Final Decree [ECF No. 14] and subsequently closed the case.

On April 3, 2023, the Debtor, through counsel, Fred S. Kantrow, Esq. ("Debtor's Counsel"), filed a Motion to Reopen Chapter 7 Case [ECF No. 17] (the "Motion to Reopen") pursuant to Bankruptcy Code § 350(b) on the basis that the Debtor had innocently failed to disclose a pre-petition injury caused by the Long Island Rail Road ("LIRR"). The Motion to Reopen stated that the Debtor commenced an action against the LIRR in November 2021 (after the Petition Date) and conceded that any such proceeds would be considered property of the estate under Bankruptcy Code § 541. The Motion to Reopen had a presentment date of April 26, 2023.

On April 28, 2023, following the lack of any opposition to the Motion to Reopen, the Court entered the Order Reopening Debtor's Chapter 7 Case [ECF No. 19].

On June 12, 2023, the Trustee filed an Application to Employ Flynn & Lauriello, PLLC, as Special Counsel to the Trustee [ECF No. 28] (the "Employment Application") to prosecute the personal injury action (the "Action") against the LIRR. On June 15, 2023, the Court entered the Order Granting the Employment Application [ECF No. 29].

On December 31, 2025, the Trustee filed the Motion to Compromise Controversy [ECF Nos. 33, 34] (the "9019 Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. The 9019 Motion requested that, among other things, the Court approve the agreed upon settlement (the "Settlement") between the Debtor and the LIRR, pursuant to which the LIRR was to remit funds to the Trustee in the amount of $1,186,766.86 (the "Settlement Proceeds") in exchange for the full satisfaction of any and all claims which have been or could be asserted by the Debtor in the Action. A hearing was scheduled for February 3, 2026.

On January 29, 2026, the Trustee filed a timely certificate of no objection [ECF No. 39] to the 9019 Motion.

On February 13, 2026, the Court entered the Order [ECF No. 40] (the "9019 Order") approving the settlement agreement which authorized the LIRR to remit the Settlement Proceeds to the Trustee and directed that such funds were to be received by the Trustee within thirty (30) calendar days after the Trustee's counsel emailed a conformed copy of the 9019 Order to LIRR's counsel.

On June 2, 2026, nearly four (4) months after the 9019 Order was entered, and following the LIRR's alleged noncompliance with the 9019 Order, the Trustee filed a Motion to Compel [ECF No. 41] (the "Motion to Compel") the immediate payment of the Settlement Proceeds to

the Trustee in accordance with the 9019 Order. On June 8, 2026, the Court entered an Order Scheduling Hearing on Shortened Notice [ECF No. 44] which scheduled an expedited hearing for June 10, 2026.

On June 10, 2026, the Court held a hearing on the Motion to Compel (the "Hearing"), the transcript of which is incorporated herein by reference, and entered an Order [ECF No. 49] (the "Compel Order") compelling the LIRR to pay the Settlement Proceeds to the Trustee no later than the close of business on June 15, 2026. The Compel Order also directed the Trustee and the LIRR to submit letter briefs regarding an issue raised at the Hearing by the Trustee: whether the LIRR should be required to pay the Trustee and the Debtor's estate interest on the Settlement Proceeds for the LIRR's failure to timely remit the Settlement Proceeds in accordance with the 9019 Order.

On June 22, 2026, the Trustee filed his letter brief [ECF No. 52] (the "Trustee's Brief") in support of an award of interest against the LIRR. On June 25, 2026, the LIRR responded [ECF No. 55] (the "LIRR Brief").[1]

**Discussion**

*(a) The Trustee's Brief*

The Trustee's Brief argues that the Trustee and the Debtor's estate are entitled to be "made whole" by the LIRR due to its failure to timely remit the Settlement Proceeds to the Trustee by the thirty-day deadline of March 19, 2026 (the "Payment Deadline"). The Trustee requests the Court to find that: (1) the LIRR is required to pay interest in the amount of $25,751.21 for its delay in remitting the Settlement Proceeds in compliance with the 9019 Order; and (2) the LIRR should be held in civil contempt and thus, should be required to pay the

[1] The LIRR's counsel submitted the unfiled LIRR Brief to Chambers on June 22, 2026, and ultimately filed the LIRR Brief on the docket on June 25, 2026.

Trustee's attorney's fees in the amount of $14,300.00 and disbursements in the amount of $45.63, as civil sanctions.

The Trustee asserts an award of interest is appropriate because the LIRR failed to comply with an order of this Court. The Trustee's Brief relies upon certain New York State Court decisions, as well as N.Y. C.P.L.R. § 5003-A, which governs a defendant's failure to promptly pay settlement proceeds. The Trustee asserts that a finding of civil contempt and sanctions in the form of attorney's fees and disbursements is supported by the holding of the Supreme Court of the United States in *Taggart v. Lorenzen*, 587 U.S. 554 (2019) (holding that civil contempt sanctions are proper after applying the "fair ground of doubt" standard). The Trustee also argues that civil contempt sanctions are appropriate under the test articulated by the Second Circuit in *PHH Mortgage Corp. v. Sensenich* (*In re Gravel*), 6 F.4th 503 (2d Cir. 2021) described below.

*(b) The LIRR Brief*

The LIRR Brief argues that: (1) there is no statutory basis which would permit the Court to issue an order for payment of interest; (2) the Trustee is actually at fault for the delay in remitting the Settlement Proceeds; (3) the LIRR is not subject to punitive damages or awards of compensation; and (4) in the alternative, if the Court imposes costs for interest against the LIRR, such interest percentage cannot exceed four percent (4%) pursuant to Public Authorities Law § 1276(5) because the LIRR is a public benefit corporation.

First, the LIRR Brief does not expand upon the allegation that there is no statutory support for an order requiring the payment of interest. Second, the LIRR Brief argues that the Trustee failed to provide a signed W-9 form (the "W-9") with a valid Taxpayer Identification Number ("TIN") until days before the Payment Deadline even though the Trustee was informed in November 2025 that such TIN would be needed before any payment of the Settlement

Proceeds could be remitted. According to the LIRR Brief, the delay in issuing the payment was a product of both the Trustee's failure to timely provide a TIN, as well as the LIRR's anti-fraud policy which requires holding the release of such funds pending TIN verification by the Internal Revenue Service (the "IRS").

Third, in support of the argument that the LIRR is not subject to punitive damages or awards of interest intended to be punitive damages, the LIRR cites to N.Y. Pub. Auth. L. §§ 1263, 1264, 1266, and *Dolginko v. Long Island Rail Rd.*, No. 23-cv-1300, 2024 WL 1282360, at *2 (E.D.N.Y. Mar. 26, 2024).

**Analysis**

*(a) Interest Payment*

N.Y. C.P.L.R. § 5003-A governs prompt payment following a settlement and subsection (a) states in pertinent part that a settling defendant shall pay all sums due within twenty-one (21) days of tender. N.Y. C.P.L.R. § 5003-A(a). This is a default rule that is subject to modification upon an express agreement of the settling parties. *Elliot v. City of New York*, No. 11 Civ. 7291, 2013 WL 3479519, at *2 (S.D.N.Y. July 10, 2013). Subsection (e) states that if a defendant fails to promptly pay a settlement, an unpaid plaintiff may enter judgment in the amount of the settlement, together with costs, disbursements, and interest from the date that the settlement and discontinuing action were tendered. N.Y. C.P.L.R. § 5003-A(e).

Courts in the Second Circuit have held that N.Y. C.P.L.R. § 5003-A applies in federal court under similar circumstances. *See Brown v. City of New York*, No. CV 2009-1809, 2012 WL 628496, at *3 (E.D.N.Y. Jan. 30, 2012) ("[I]rrespective of whether a federal court retains jurisdiction over a settlement agreement . . . the law that governs interpretation of the agreement remains the law which would be followed by the appropriate state court in deciding a contract

dispute) (citing *LaBarbera v. Dasgowd, Inc.*, No. CV-03-1762, 2007 WL 1531895, at *2 (E.D.N.Y. May 22, 2007) (*adopted by Brown v. City of New York*, No. 09-CV-1809, 2012 WL 626395, at *1 (E.D.N.Y. Feb. 27, 2012); *Diaz v. City of New York*, No. 15-cv-1842, 2016 WL 11481717, at *2 (E.D.N.Y. July 1, 2016) (adopted by *Diaz v. City of New York*, No. 15-CV-1842, 2016 WL 4059351, at *2 (E.D.N.Y. July 29, 2016). The *Brown* court faced similar facts that are present before the Court now and is instructive in coming to a determination here.

In *Brown*, a defendant did not make timely payment of the settlement pursuant to N.Y. C.P.L.R. § 5003-A and one unpaid plaintiff moved for interest in accordance with subsection (e) of the statute. In response, the defendant asserted that interest should not be applied because the plaintiff was also at fault for failing to provide accurate information in the release papers and thus, failing to tender a duly executed release. *Brown*, 2012 WL 628496, at *4. The court ultimately held that the other plaintiffs who did in fact properly tender the release were entitled to interest, but the plaintiff who provided inaccurate information was not. *Id.* at *7.

Under *Brown*, *Elliot*, and *Diaz*[2], interest should be awarded pursuant to N.Y. C.P.L.R. § 5003-A in situations where a defendant fails to timely remit payment. However, *Brown* holds that parties are not entitled to an interest award where a plaintiff's conduct causes or at least partially causes the failure to timely remit a settlement payment.

Here, the Trustee is not entitled to interest because his actions, or lack thereof, are at least partially the reason that the Settlement Proceeds were not tendered by the Payment Deadline. The Trustee acknowledges that the W-9, with the proper TIN, was not provided to the LIRR until March 6, 2026, less than two (2) weeks from the Payment Deadline. *Trustee Brief*, at 3. The

[2] *Elliot*, 2013 WL 3479519, at *3 ("Since Defendants failed to make payment to Plaintiffs . . . Plaintiffs are entitled to "judgment . . . for the amount set forth in the release . . . and interest on the amount set forth in the [Settlement Agreement] from the date that the [Settlement Agreement] was tendered.") (quoting N.Y. C.P.L.R. § 5003-A(e)); *Diaz*, 2016 WL 11481717, at *2-4.

LIRR established that it informed the Trustee in November 2025 that a valid W-9, which contained the correct TIN, would be needed prior to tendering payment. *LIRR Brief*, at 2. The record does not establish that the delay was intentional, nefarious, or otherwise willful, but as noted, the TIN and W-9 were issued shortly before the Payment Deadline, decreasing the LIRR's chance of remitting the Settlement Proceeds before the Payment Deadline. Further, it is both reasonable and foreseeable that an entity like the LIRR would require time to review, process, verify, and issue payment.

*(b) Civil Contempt and Sanctions*

In support of the Trustee's argument for a finding that the LIRR should be held in civil contempt and sanctions should be awarded, the Trustee's Brief cites to the Supreme Court decision *Taggart v. Lorenzen*, 587 U.S. 554 (2019), as well as the Second Circuit decision *PHH Mortgage Corp. v. Sensenich* (*In re Gravel*), 6 F.4th 503 (2d Cir. 2021). The Trustee's Brief argues those two decisions support an award of civil sanctions based upon the LIRR's failure to comply with the 9019 Order. *Trustee Brief*, at 4. The Trustee's argument is misguided.

In *Taggart,* a creditor of the debtor violated a discharge order, a type of injunction. *See Taggart*, 587 U.S. at 559-60 ("The question before us concerns the legal standard for holding a creditor in civil contempt when the creditor attempts to collect a debt in violation of a bankruptcy discharge order . . . section 524, says that a discharge order 'operates as an injunction . . . . '") (quoting 11 U.S.C. § 524(a)(2)). The Supreme Court held that the "no fair ground of doubt" standard applies to instances where a creditor violates a discharge order and a finding of civil contempt and sanctions may be appropriate in such circumstances. *Id.* at 562 ("Under the fair ground of doubt standard, civil contempt therefore may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or

the statutes that govern its scope."). In contrast to *Taggart*, the order at issue here approved a settlement agreement which provides for the payment of money – that is not an injunction.

In *In re Gravel*, the Second Circuit reviewed a bankruptcy court decision relying upon its contempt power in issuing sanctions against a party for allegedly violating an injunction. *In re Gravel*, 6 F.4th at 512-13 ("Because the bankruptcy court here relied on its contempt power, our review is limited to whether it abused its discretion in exercising that power . . . [a]side from enjoining acts in other proceedings, there is no injunction here (or similar command or equitable remedy) to enforce – *i.e.*, the orders fail to describe an 'act or acts restrained or required.'") (citations omitted). The Second Circuit gave clear instructions: "To form the basis for contempt, an order must leave 'no doubt in the minds of those to whom it was addressed . . . precisely what acts are forbidden.'" *Id.* at 512 (quoting *Drywall Tapers & Pointers of Greater N.Y., Local 1974 v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n,* 889 F.2d 389, 395 (2d Cir. 1989)). "The very purpose of the civil contempt power is to induce compliance with a court's injunction." *Id.* (citing *Taggart,* at 559). Here, again, there was no injunction for the LIRR to comply with, only an order approving a settlement agreement obligating it to remit funds. Further, the facts support that the LIRR was attempting to comply with the 9019 Order, but was initially delayed in doing so by the Trustee's actions, and later by its own internal safeguards and protocol.

The Court declines to adopt the rationale supported by the Trustee that the "no fair ground of doubt" standard applies to all types of bankruptcy court orders and instead will apply the legal standard cited in the Trustee's Brief that courts within the Second Circuit have applied to violations of stipulations entered into by parties. *Trustee's Brief,* at 4. Courts may impose civil contempt sanctions when the movant establishes that: (1) the order violated was clear and

unambiguous; (2) proof of noncompliance is clear and convincing; and (3) the contemnor did not diligently attempt to comply in a reasonable manner. *In re Eletson Holdings Inc*., 678 B.R. 474, 479 (citing *King v. Allied Vision, Ltd*., 65 F.3d 1051, 1058 (2d Cir. 1995).

First, it is undisputed by either party that the 9019 Order is clear and unambiguous. The LIRR was required to remit the Settlement Payment to the Trustee by the Payment Deadline. The Trustee argues that the 9019 Order did not specify what the LIRR would need regarding the W-9, but that negates the argument that the 9019 Order was clear and unambiguous. The Trustee's argument simply supports the conclusion that the 9019 Order and Settlement did not contain the necessary terms and conditions, which is not an issue raised. The LIRR does not dispute that the 9019 Order was clear and unambiguous as to its obligations and, therefore, the first factor is met.

Second, it is similarly undisputed that proof of noncompliance by the LIRR is clear and convincing. The express terms of the Settlement state that LIRR was to remit payment by the Payment Deadline, and the LIRR did not do so until ordered by this Court following the Hearing. The LIRR gives reasons to justify its noncompliance, but there is no dispute that it did not comply with the Settlement. Thus, the second factor is met.

Third, it is disputed as to whether the LIRR (the contemnor) diligently attempted to comply with the 9019 Order in a reasonable manner. The Court is unpersuaded by the Trustee's assertion that the LIRR did not act with reasonable diligence to comply with the Settlement. The Trustee claims that the LIRR should have raised the fact that there is such a TIN verification policy and further documentation requirement, and that they should have notified the Trustee of this during the Settlement negotiation. *Trustee's Brief*, at 4. The Court agrees with the Trustee's points but that does not mean the LIRR acted without reasonable diligence. In the November 2025 email to the Trustee, the LIRR made it explicitly known that a TIN would be needed in

connection with the W-9,[3] and the record of the Hearing supports the LIRR's consistent efforts to comply or at least communicate its efforts to do so. If the Trustee acted sooner, the LIRR may have been able to comply with the Settlement.

Thus, the Court denies the Trustee's request for civil contempt sanctions.

*(c) Attorney's Fees and Costs*

In light of the foregoing, the Court finds that costs should be awarded to the Trustee pursuant to C.P.L.R. § 5003-A.

N.Y. C.P.L.R. § 5003-A does not explicitly provide for attorney's fees as the statute only provides that costs and disbursements shall be awarded if a judgment is entered against a defendant. N.Y. C.P.L.R. § 5003-A; *Diaz*, 2016 WL 11481717, at *3 ("By its explicit terms, § 5003-A does not provide for recovery of attorney's fees . . . there is nothing in the legislative history . . . indicating that attorney's fees are to be included in 'costs' under the statute."). While courts have granted attorney's fees under C.P.L.R. § 5003-A,[4] the *Diaz* court subsequently held that an award of attorney's fees is improper under the statute.

Here, given the circumstances of the Trustee's request and the applicable caselaw, the Court finds that costs, not attorney's fees, should be awarded to the Trustee solely in connection with making the Motion to Compel. The LIRR's delay in remitting the Settlement Proceeds to the Trustee was not solely the LIRR's fault and the LIRR acted diligently to comply. But the Settlement Payment was ultimately remitted after the Hearing, not sooner, and the LIRR should have communicated its protocol to the Trustee from the beginning.

---

[3] The November 2025 email was sent before the 9019 Order, so it does not support a finding that the email was an effort to comply with that order, but the LIRR's actions after entry of the 9019 Order were in follow-up to that initial instruction or request, and demonstrate the LIRR's efforts to communicate openly with the Trustee regarding its procedures.

[4] *See Elliot*, 2013 WL 3479519, at *2-3.

***Conclusion***

Based on the foregoing, it is hereby

**ORDERED**, that the Motion is granted in part and denied in part as set forth herein; and it is further

**ORDERED**, that the LIRR shall pay the Trustee's costs and disbursements in the amount of $45.63; and it is further

**ORDERED**, that the Trustee's request for an award of interest in the amount of $25,751.21 is denied; and it is further

**ORDERED**, that the Trustee's request for attorney's fees in the amount of $14,300 is denied.

**Dated: Central Islip, New York**
**September 3, 2026**

Sheryl P. Giugliano
United States Bankruptcy Judge